UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JILIANNE WARNER     Plaintiff

v.     Case No. 3:19-cv-00453-RGJ

MIDNIGHT RECOVERY, INC., ET AL.     Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jilianne Warner's ("Warner") moves to remand [DE 6] based on the involuntary dismissal of non-diverse defendants. GEICO responded, and the matter is ripe. [DE 7, Resp.; DE 10, Reply]. For the reasons below, the Court **GRANTS** Warner's Motion to Remand.

**I. BACKGROUND**

**A. Factual background**

On December 29, 2017, a tow truck owned by defendant Midnight Recovery, Inc. and driven by Defendant Christian Worley ("Worley") struck Plaintiff Jilianne Warner's ("Warner") car from behind. [DE 1-2, Compl., ¶10]. Worley called MetroSafe 911 to report the crash. [*Id.* at ¶12]. He spoke with 911 Operator Ruth Williams ("Williams"), who took basic information about the time and location of the crash. Williams did not ask whether there were any injuries. She classified the event as a non-injury accident and did not dispatch an ambulance. [*Id.*].

About a minute after Worley's call, an unidentified bystander placed a second 911 call to report the crash. [*Id.* at ¶13]. Operator Courtney Wilder ("Wilder") took this call and failed to determine or classify whether the accident involved injuries. [*Id.*]. Several minutes later (8 minutes after the crash occurred) a third person called 911, stating that there were injured parties

and asking why an ambulance had not arrived. MetroSafe 911 then dispatched an ambulance. [DE 6-2, p. 370].

### B. Procedural background

On June 22, 2018, Warner filed an action in Kentucky state court against Midnight Recovery, Inc. and Worley for injuries sustained in the wreck. [DE 1-2, pp. 38-44]. Warner also sued MetroSafe 911 Operators Williams and Wilder, as well as their supervisors, Angela Downes ("Downes") and Edward Meiman ("Meiman"), who were responsible for training (Williams, Wilder, Downes, and Meiman are collectively "the 911 Defendants"). [*Id.*]. In discovery Warner learned that Midnight Recovery, Inc. handles runs for GEICO insurance customers. On March 27, 2019, Warner filed an amended complaint adding GEICO as a defendant. [DE 1-2, pp. 45-54].

On April 25, 2019, the Circuit Court dismissed the actions against the 911 Defendants for failure to state a claim upon which relief can be granted. [DE 6-1]. The 911 Defendants were the only non-diverse defendants to the action.

On June 21, 2019, Defendant GEICO petitioned for removal to federal court based on diversity jurisdiction. [DE 1]. Plaintiff Warner moved to remand based on involuntary dismissal of the non-diverse defendants. [DE 6]. In its response, GEICO asserts fraudulent joinder of the 911 Defendants. [DE 10]. GEICO claims that fraudulent joinder would defeat the effect of the involuntary dismissal, making removal proper.

## II. DISCUSSION

Removal to federal court is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Diversity jurisdiction gives "[t]he district courts . . . original jurisdiction [over] all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between . . . citizens of different states." 28 U.S.C. § 1332(a), (a)(1). A defendant removing a case has the burden of proving jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). The determination of federal jurisdiction in a diversity case should be made at the time of removal. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000).

When a party moves to remand a civil action removed to federal court, "'the removal statute should be strictly construed,' and any doubts should be resolved in favor of remanding the case to state court." *Huff v. AGCO Corp.*, 2019 U.S. Dist. LEXIS 40501, at *4 (E.D. Ky. Mar. 13, 2019) (quoting *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006)). This is because "the remand standard, which resolves all differences in favor of remand, highlights the belief that state courts are equally able to administer justice." *Id.* at *5.

Warner disputes GEICO's removal of the case on two grounds: first, the order of the Circuit Court dismissing the 911 Defendants is not final and appealable under Ky. CR 54.02(1), and therefore the 911 Defendants are still parties to the case, preventing complete diversity. Second, Warner did not voluntarily dismiss the non-diverse defendants. Thus, the question for the Court is whether GEICO properly removed the action based on diversity of citizenship at the time of removal and, if not, whether Warner's motion for remand must be granted.

**A. The Voluntary-Involuntary Rule.**

The voluntary-involuntary rule "conditions removability on voluntary actions of a plaintiff, rather than facts beyond a plaintiff's control." *Davis v. McCourt*, 226 F.3d 506, 510 n.3 (6th Cir. 2000) (citing *Hollenbeck v. Burroughs Corp.*, 664 F. Supp. 280. 281 (E.D. Mich. 1987). "The rationale and meritorious purpose of the voluntary-involuntary test is the prevention of premature removals in cases where the issue of the resident defendant's dismissal has not been finally determined in state court." *Saylor v. General Motors Corp.*, 416 F. Supp. 1173, 1175 (E.D. Ky.

1976) (*see Weems v. Louis Dreyfus Corp.*, 380 F.2d 545 (5th Cir. 1967); *Ennis v. Queen Ins. Co.*, F. Supp. 964 (W.D. Tenn. 1973)). The court must therefore "determine whether the manner in which the resident defendant was dismissed may be construed as a voluntary act by the plaintiff…" so that "the plaintiff would not have appealed from the order of dismissal." *Id.* Otherwise, "removal following an involuntary dismissal may be only temporary: the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to state court." *Cobalt Mining, LLC v. Bank of Am., N.A.*, 2008 U.S. Dist. LEXIS 19300, at *2 (W.D. Ky. 2008) (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71–72 (7th Cir. 1992)).

Under the Kentucky Civil Rules:

> [A]ny order which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Ky. CR 54.02(1).

The Jefferson County Circuit Court order dismissing the 911 Defendants adjudicated the claims against the 911 Defendants only. Thus, the Order is interlocutory and subject to revision until the claims against all the parties have been adjudicated. Only when all claims against all parties to the suit are adjudicated will the Circuit Court Order be final and appealable. The 911 Defendants are therefore still parties to the case and complete diversity does not exist.

Warner did not voluntarily dismiss the 911 Defendants. On the contrary, she opposed the dismissal in state court. [DE 6-3, Resp. to Mot. to Dismiss]. This is precisely the situation to which the voluntary-involuntary rule must be applied. If this court were to deny Warner's motion to remand and hear this case, the Circuit Court's dismissal of the 911 Defendants would be final and appealable only upon final judgment by this court. At that point, Warner could then appeal

4

the Circuit Court's Order of Dismissal. If the Kentucky Court of Appeals were to reverse the Circuit Court's Order of Dismissal, removal to federal court would have been improper and the judgment of this court would be moot. This "yo-yo effect" is what courts seek to avoid by applying the voluntary-involuntary rule. *Cobalt Mining*, 2008 U.S. Dist. LEXIS 19300 at *2 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71–72 (7th Cir. 1992)). Because the non-diverse defendants remain parties to the case and GEICO did not obtain their consent to removal, removal is improper. 28 USC §1446(b)(2)(A).

This Court has only accepted one exception to application of the voluntary-involuntary rule. *Cobalt Mining*, 2008 U.S. Dist. LEXIS 19300 at *15. When the non-diverse defendant was fraudulently joined, the remaining diverse defendant may remove the action to federal court despite the dismissal being "involuntary" on behalf of the plaintiff. *Wiacek v. Equitable Life Assurance Soc.*, 795 F. Supp. 223, 226 (E.D. Mich. 1992). If the non-diverse defendants were fraudulently joined, their consent is not required for removal. *See Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564 (6th Cir. 2015), *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (quoting *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). Thus, removal was proper only if GEICO can prove fraudulent joinder.

**B. Fraudulent Joinder.**

Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). It allows defendants to remove cases lacking complete diversity if they show that the plaintiff has "no colorable cause of action" against the non-diverse defendant. *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). The Court's task is not to provide an authoritative answer

5

on the merits of the case but determine whether the plaintiff has provided a non-fraudulent basis for recovery against a non-diverse party. *In re Welding Rod Prod. Liab. Litig.*, No. 1:03-CV-17000, 2004 WL 1179454, at *3 (N.D. Ohio May 21, 2004).

In this Circuit, the applicable standard for determining fraudulent joinder is whether the plaintiff has a "colorable cause of action" against the non-diverse defendant. *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999). "Asked another way, the question 'is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.'" *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). Furthermore, the standard to determine whether the cause of action is colorable is "more lenient than…the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). "Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Hix v. Affiliated Computer Svcs. Inc.*, No. 5:08-521, 2009 U.S. Dist. LEXIS 64991, 2009 WL 2240548, at *2 (E.D. Ky. July 27, 2009) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992)).

The bar for a defendant to prove fraudulent joinder is high. If the claim against the non-diverse defendant "has even a 'glimmer of hope,' there is no fraudulent joinder." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011) (citing *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999). "All doubts as to the propriety of removal are resolved in favor of remand." *Walker v. Philip Morris USA, Inc.*, 443 Fed. Appx. 946, 952 (6th Cir. 2011) (citing *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

Even though the fraudulent joinder inquiry is conducted in federal court, "Kentucky pleading rules apply." *Combs v. ICG Hazard, LLC*, 934 F.Supp.2d 915, 923 (E.D. Ky. 2013)

(remanding). In Kentucky, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Ky. R. Civ. P. 8.01(1)(a). Kentucky, "still follows the old notice-pleading regime." *Williams v. Altman, McGuire, McClellan & Crum*, Civ. No. 12–131–ART, 2013 WL 28378 at *3 (E.D.Ky. Jan. 2, 2013).[1] Kentucky courts may dismiss a complaint only when a plaintiff "would not be entitled to relief under any set of facts which could be proved." *Fox v. Grayson,* 317 S.W.3d 1, 7 (Ky. 2010). Complaints can be conclusory as long as the plaintiff gives fair notice of the claims. *Pierson Trapp Co. v. Peak,* 340 S.W.2d 456, 460 (Ky. 1960). Further, "the Rules of Civil Procedure with respect to stating a cause of action should be liberally construed" and "much leniency should be shown in construing whether a complaint . . . states a cause of action." *Smith v. Isaacs,* 777 S.W.2d 912, 915 (Ky. 1989) (internal quotation marks omitted and markings in original).

    **a. Waiver of Fraudulent Joinder As a Basis for Removal**

Williams argues that GEICO waived fraudulent joinder as a basis for removal because it is not mentioned in the Notice of Removal. If a defendant fails to raise a substantive ground for removal in its notice of removal or does not file an amendment raising that issue within thirty days, that basis for removal is waived. *Hahn v. Rauch*, 602 F. Supp. 2d 895, 909 (N.D. Ohio 2008) ("These bases were raised for the first time in Defendants' opposition to the motion to remand. A defendant cannot argue a new substantive ground as a basis for removal in opposing remand.").[2] Fraudulent joinder is a substantive basis for removal. *Tincher v. Ins. Co. of State of Pennsylvania*,

---

[1] The federal pleading standard is more stringent. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotations omitted)).

[2] However, "The Sixth Circuit allow[s] the defective allegations to be cured after the thirty days [if] diversity jurisdiction existed at the time of removal and only 'additional allegations regarding diversity' were added." *Uppal v. Elec. Data Sys.*, 316 F. Supp. 2d 531, at *11 (E.D. Mich. 2004) (quoting *Tech Hills II Assocs. V. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 969 (6th Cir. 1993)).

7

268 F. Supp. 2d 666, 667 (E.D. Va. 2003)(Even if defendant insurer which removed state court action to federal district court requested leave to amend its notice of removal to allege fraudulent joinder of a defendant who was allegedly a citizen of the state in which the action was brought, the amendment could not be granted where the allegation of fraudulent joinder was missing from the notice of removal and insurer did not raise the issue until its response to plaintiff's motion to remand, well beyond the thirty-day time limit for notice of removal.) Thus, GEICO waived its ability to claim fraudulent joinder as a basis for diversity jurisdiction. However, even if considered, GEICO's fraudulent joinder argument fails.

### b. Fraudulent Joinder Analysis

The question in determining whether the 911 Defendants were fraudulently joined is whether Warner has at least a colorable cause of action against them under Kentucky state law. *Jerome-Duncan* 176 F.3d at 907 (citing *Alexander*, 13 F.3d at 949). In her complaint, Warner alleges that the 911 Defendants were negligent in the performance of their ministerial duties, which exacerbated the injuries she received in the crash. [DE 1-2, Compl., ¶ 40]. To establish a claim for negligence under Kentucky law, Warner must establish (1) a duty on the part of the 911 Defendants, (2) a breach of that duty, and (3) injury. *Mullins v. Commonwealth Life Ins. Co.,* 839 S.W.2d 245, 247 (Ky. 1992).

Warner alleges that defendant 911 Operators Williams and Wilder owed ministerial duties "to exercise reasonable and ordinary care to obtain all basic information from callers, including the type of emergency and hazards involved, and to initiate an appropriate public safety response." [DE 1-2, Compl., ¶ 40]. Warner alleges that defendants Williams and Wilder breached their duties by failing to obtain all basic information about the crash and by failing to dispatch an ambulance to the scene. [*Id.* at ¶43].

Warner further alleges that defendants Downes and Meiman "owed [ministerial] duties to exercise reasonable and ordinary care to properly train all MetroSafe 911 Operators to adhere to the duties of 911 Operators." [*Id.* at ¶42]. Warner alleges that they breached their duties "by failing to properly train Operator Williams and Operator Wilder to adhere to the duties of 911 Operators." [*Id.* at 44].

In its response, GEICO asserts that Warner's claim against the 911 Defendants has no colorable basis for two reasons. [DE 9, p. 398-99]. First, the Circuit Court's dismissal held that the 911 Defendants did not owe a duty to Warner as a matter of law. [*Id.* at 399]. Second, GEICO claims that Warner articulated no plausible basis for concluding that the 911 Defendants' actions caused or contributed to her harms or injuries. [*Id.* at 402].

The Circuit Court cited application of the 'public duty doctrine' in *McCuiston v. Butler* in determining that the 911 Defendants owed no duty to Warner. [DE 6-2]. The Circuit Court agreed that a plaintiff may abrogate the public duty doctrine only upon showing a "special relationship" between the plaintiff and the public official. [DE 6-2]. The *McCuiston* court discussed the policy rationales behind the doctrine, including that "persons who serve the public must be allowed to carry out their function without fear of having to answer for harm caused to an individual by events which are outside the control of the public official." *McCuiston v. Butler*, 509 S.W.3d 76, 79 (Ky. App. 2017) (quoting *Ezell v. Cockrell*, 902 S.W.2d 394, 397 (Tenn. 1995)). Likewise, it stated that "'the special relationship rule was developed in the context of injuries suffered by members of the general public disassociated with and far removed from negligent acts that allegedly caused their injuries.'" *Id.* at 82 (quoting *Gaither v. Justice & Public Safety Cabinet*, 447 S.W.3d 628 (Ky. 2014).

The *McCuiston* court cited the two-part special relationship test from *Fryman v. Harrison*, which held that a special relationship exists if: 1) the victim was in state custody or otherwise restrained by the state when the injury producing act occurred; and 2) the violence or other offensive conduct was committed by a state actor. *Id.* at 80–81 (citing *Fryman v. Harrison*, 896 S.W.2d 908 (Ky. 1995)). Although the *McCuiston* court held that this test applies to 911 dispatchers, other courts disagree, including the lower court in *McCuiston*. *See also Delong v. County of Erie*, 89 A.D.2d 376 (N.Y. 1982). This is understandable, as applying the special relationship test to 911 operators is problematic. First, an individual who contacts 911 may not be in state custody or otherwise restrained by the state. [DE 6-3, Plaintiff's Resp. to 911 Defs. Mot. to Dismiss]. Second, the acts that prompt individuals to contact 911 are likely rarely performed by state actors. And third, a person who calls 911 may be someone other than the injured party, especially as it could be a person's injuries that prevent her from calling 911 herself. [DE 9, Resp. to Plaintiff's Mot. to Remand].

Although Kentucky courts have not found liability for a 911 dispatcher based on a "special relationship" with the caller, courts have found that liability may exist for other public officials who failed to perform their ministerial duties. *See Haworth v. H.R.*, 2018 Ky. App. Unpub. LEXIS 722 (Ky. Ct. App. 2018). *Coleman v. Smith*, 405 S.W.3d 487 (Ky. Ct. App. 2012). For example, in *Haworth v. H.R.*, the court held that a fact-specific analysis is necessary to determine whether a public officer's duties were ministerial or discretionary. *Haworth*, 2018 Ky. App. Unpub. LEXIS 722, at *6–*9. In that case, the Court of Appeals of Kentucky found that "without the complete text of [the] SOP . . . , neither this Court nor the circuit court can determine whether ministerial or discretionary duties were established . . ." *Id.* at *8.

Likewise, in *Coleman v. Smith*, the Kentucky Court of Appeals stated that ministerial acts (as opposed to discretionary acts) do not qualify an individual for immunity under the law. *Coleman*, 405 S.W.3d at 494. The *Coleman* court stated that "[o]ur Supreme Court has cautioned against the *ad hoc* application of these guidelines because 'few acts or ever purely discretionary or purely ministerial.' Instead, 'determining the nature of a particular act or function demands a more probing analysis….'" *Id.* at 12–13 (quoting *Haney v. Monskey*, 311 S.W.3d 235, 240 (Ky. 2010)). Thus, failure to perform ministerial duties can abrogate public officials' immunity from liability to third parties. Although Kentucky courts have not considered whether the failure to perform ministerial duties can also abrogate public officials' protections from liability under the public duty doctrine, it seems possible that a court would find so.

In applying these holdings, contrary to GEICO's claim that *McCuiston* is "on all fours" with this case, there are, in fact, significant differences. [DE 9, PageID 400]. First, the dispatcher in *McCuiston* was claiming he did not have liability in part because he "acted in the prescribed manner for a 911 dispatcher and performed his responsibilities in the typical manner." *McCuiston*, 509 S.W.3d at 82. Additionally, the public policies espoused by the court in *McCuiston* do not apply here, where the alleged harms Warner suffered occurred not because of "events which [were] outside the control of" the 911 defendants, but those precisely *in* their control. *Id.* at 79 (Ky. App. 2017) (quoting *Ezell v. Cockrell*, 902 S.W.2d 394, 397 (Tenn. 1995)). Likewise, Warner's harms are not alleged to be "'disassociate[d] with and far removed from negligent acts that allegedly caused [her] injuries.'" *Id.* at 82 (quoting *Gaither v. Justice & Public Safety Cabinet*, 447 S.W.3d 628 (Ky. 2014). Instead, Warner claims that it is the negligent acts of the 911 Defendants themselves that caused her injuries. [DE 1-2, Compl., ¶ 43, 44].

Warner had a colorable claim against the 911 Defendants. Not only did her claim comply with the Kentucky pleading rules, but she also arguably had "a reasonable basis for predicting that the state law might impose liability on the facts involved.'" *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). Additionally, Warner may appeal the non-diverse defendants' dismissal once the judgment is final, and it is possible the Court of Appeals could find that there was a duty owed to her by the 911 Defendants, not based on a special relationship, but based on nonperformance of their ministerial job duties. Because there was no fraudulent joinder, the voluntary-involuntary rule applies to GEICO's removal of the case, and this Court must remand the action to the Jefferson Circuit Court.

## CONCLUSION

Having considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** that Warner's Motion to Remand [DE 6] is **GRANTED**.

This case is **STRICKEN** from this Court's active docket.

Cc: Jefferson County Circuit Court